Williams versus Attorney General, sorry, number 24 dash 1091. Go ahead. Please the court, Vivek Suri on behalf of the federal government. I'll also be representing the government in the Bost case you'll be hearing later this morning. Now reserve four minutes for rebuttal. That'll be granted. Section 922 G1 accounts for about a 10th of the federal criminal docket and probably does more to combat gun violence than any other federal statute. The federal government therefore has a profound interest in ensuring that this statute is implemented in a manner that is workable and fulfills its vital public safety objectives. But it also respects the fundamental rights secured by the second. The starting point for any constitutional analysis of section 922 G1 should be the Supreme Court's repeated recognition in Heller and later second amendment cases that it is quote presumptively lawful close quote to disarm fountains. Not violent felons or felons who have committed crimes that judges consider dangerous or felons who are still serving their sentences. Felons. Mr. Suri, I think that's a little over five minutes. Oh, no, please go ahead. You get your time. For that reason, the commission of a crime punishable by at least a year of imprisonment is prima facie sufficient to disarm an individual. But that presumption can be rebutted as this court recognized in range. And as we entirely agree, that is to say, an individual should be allowed to show that the generalization that felons are dangerous doesn't apply to him. And in conducting that analysis, the nature of the felony is probably going to be the most important factor. It's going to be much more difficult for a person to rebut that showing that presumption of dangerousness if he has, for example, committed a violent crime as opposed to a crime like food stamp fraud. But that isn't the only factor courts should consider. Courts should also consider the circumstances of the offense, the record of the individual and any other relevant factor that may bear on the dangerousness inquiry. I'm sorry. I'll waive the remainder of my time. Eager to get to the court's question. I'll also defer to my colleagues. Judge Bibas. I wanted to let you finish your. Yeah, I have just one more point that I wanted to make, which is a procedural one. The appropriate mechanism for resolving this dangerousness issue now is the Section 925C process that the Department of Justice has revitalized. It is not civil suits involving prospective as-applied challenges, and it certainly is not criminal cases involving defenses under the Second Amendment. Now, the reason for that is not that there is some procedural doctrine that prohibits people from bringing civil suits or criminal defenses. Rather, it's just that those defenses or claims will fail now that this Section 925C process is available. What the Second Amendment requires is a reasonable opportunity for an individual to rebut the presumption of dangerousness. The Second Amendment doesn't take a position on exactly how that opportunity is provided. And now that Congress has provided that opportunity through Section 925C, and now that the executive branch has made that process operational, there's no longer any basis for a court to declare that the statute is unconstitutional. And with that, I'll welcome the court's question. Let me just, if I could just follow up on that. What's the status of the reinvigoration of 925C? Can you give us an update? And also, there was a notice of proposed rulemaking. The deadline passed in October. I haven't heard anything. Does it matter? There are two ways in which that I'd like to answer that question. Sure. The first is what is going on with the notice of proposed rulemaking, and the second is what is going on in the interim while that notice is being handled. The notice of proposed rulemaking was issued in July, in late July. The comment period closed in late October. We then had a government shutdown that took up some time that we read about. And now we are in the process of continuing with that rulemaking. We received thousands of comments, which we are required under the APA to address. So that will take some time. I can't give the court a specific deadline about when that process will be concluded, but we are certainly following. Fair enough. But do we do we require then all? I take it that you want to require all people who might ordinarily resort to district court for declaratory judgment to go through this process. You know, you can comment on that, but do we do it? Is this the right time to do that? It probably will be by the time the court ultimately decides the case, depending on how long the court takes to decide the case. So I can say that. And it's even more likely will be by the time whichever side loses this case, files a cert petition in the Supreme Court. So there's a very strong likelihood that that process will be in place at the very least by the time the case is ultimately resolved. So, yes, now there is this interim question of what to do until then. And even in the interim, although there isn't a rule setting out a framework under which these applications are processed, the attorney general has invited people to apply. Civil litigants who have filed lawsuits against the government have been invited to apply. And we saw your 28-J letter. Twenty-two more people have gotten their guns back. Twenty-two people have gotten their guns. How many applications have you gotten? I am not aware of the total number of applications we have received. I know that there are at least some applications that we are still investigating and have not acted upon. But I expect the numbers will rise significantly after the notice of proposed rulemaking is completed, because right now we have not opened up the process to the public as a whole. It's just people who have brought civil suits or have applied for pardons. Should we impose an exhaustion requirement now? I would not think of it as an exhaustion requirement, Your Honor. Instead, I would think of it as the Second Amendment challenge brought in court fails on the merits. And the reason it fails on the merits is what the Second Amendment requires is a reasonable opportunity to get your gun rights back. And once that's provided, there's no violation. But more of a prudential matter. As a prudential matter, courts should stay their hands to allow that process to take place. I wouldn't even say as a prudential matter, just as a matter of constitutional interpretation. And on this point, I'd refer the court to Judge DePars' opinion for the Sixth Circuit in United States against Williams, where he explains what the historical tradition shows is that there is an ability for legislatures to impose categorical rules, disarming groups. We do have a history of the rebels that chased rebellion, got their guns back. But as I understand the argument from Williams and others like him, the argument is that I'm never validly dispossessed because my crime isn't a felony in the way that the Supreme Court referred to the word felony, which was, as you know, were crimes, very severe crimes, usually punishable by death. That raises the question of what is the permissible scope of the initial category, even granting that there is some ability to get rights back on the back end. And respectfully, that is the sort of question where post-ratification history is helpful. Post-ratification history cannot establish the principles underlying the Second Amendment. We entirely agree with challengers in various Second Amendment cases that the founding history is paramount there. But post-ratification history can illustrate how a principle that was established at the founding applies to some specific circumstance. Here, the principle that was established at the founding was you can disarm dangerous categories of people. But we now know that legislatures across the entire country have disarmed felons, not just violent felons or some subset of felons. Well, categories of dangerous people, can you define that? People who are... Martha Stewart, fraudsters. What's the definition of dangerous people? Martha Stewart would have a good case for getting her gun rights back. For the same reason Range prevailed. Exactly right. OK, but why not someone like Williams? Mr. Williams may well have a very strong case as well. I don't wish to resist his claim on the merits. I'm only making a procedural point, the appropriate avenue for him to bring his claim down. So what should the declaratory judgment, what should the district court do if Mr. Williams was starting today? He filed his civil action. What remedy should the district court provide under your point of view? The district court should dismiss the case without prejudice and allow him to proceed through the Section 925C process. You focused a lot on this 925C process and you said twice that the Second Amendment requires a reasonable opportunity to rebut the presumption of dangerousness. And you point to the 925C process as that opportunity. But we know that that process has been on the books, but not funded. If that process for a huge duration of time, 20 years, 30 years maybe, is unfunded, does that mean that 922G1 would be unconstitutional? Because there wouldn't have been a reasonable opportunity to rebut that presumption. During that period, there was indeed a constitutional problem. And the solution to that constitutional problem during that period was prospective civil suits like in range. And so so then can I just tease out the 925C process? Don't you think that that's it's fundamentally discretionary and isn't that very, very akin to like relying on the pardon power? Someone saying, oh, aha, you shouldn't get another habeas or you shouldn't get this because at the end of the day, we've got a fundamentally discretionary process and it's the pardon power. And just fall back on the pardon power. I appreciate that concern. And if it were a matter of grace, like the pardon power, then our argument would not work. Isn't it really close to a matter of grace, though? No. For two reasons. First, there's judicial review on the back end. There's no judicial review in the context of pardons. Second, although the statute does say may, we think it would be an abuse of discretion to decline to award relief in a context where the Second Amendment would require granting relief. That is to say, the may must be construed in a manner that is consistent with the Second Amendment. And so can I just talk about that judicial review? The judicial review provision talks about the expansive record and additional evidence that may be brought at times, if I'm recalling correctly. So what exactly what exactly does that mean? Is that really judicial review of the agency decision or is that just a whole de novo case such that 925C operates much more like an exhaustion mechanism than judicial review? We typically think of judicial review of agency decisions as confined to the agency record. And now you're saying, no, no, no, something completely new. And so it feels to me, at least, that you don't really have traditional judicial review of agency action, but kind of a separate judicial process with a whole new record that parties can create. Leaving the 925C process much more like the pardon power. No, I don't think that's quite right. The judicial review of that agency action works like judicial review of other agency action. The agency conducts its investigation and considers evidence, including the evidence that the individual puts before it. And then the court reviews the same evidence to determine. But it's not limited to the administrative record. And that's typically what judicial review of an agency decision is. There's a record rule. If that is so, and I don't agree that that is so, but if that is so, that would make it an even better case for us. Because that would mean that the individual has an opportunity to put in even more evidence. And that means that the Second Amendment problem is even less serious than it otherwise would be, because he now has two bites at the apple. He can put in evidence before the agency and he can put in evidence before the court. What happens if a different administration shuts down the 925C process? But then I think the constitutional problem that existed before we revived this process would arise again. And then you'd be back in the world that you were in range where courts would have to decide prospective suits. Now, I still think you don't get into criminal cases where people can raise these defenses after they've been caught having a gun. They'd still have to raise it prospectively through a declaratory judgment action. But I think that would be necessary in that circumstance.  I'd like to step back from 925C to the broader framing issue. You began your argument by talking about saying that Bruin said it's, we presume that it's fine to disarm felons. But the wording was actually, we do not cast any doubt on presumptively lawful, you know, longstanding prohibitions on felons, the mentally ill, etc. Which then requires us to ask what's longstanding? The shape of 922G1, look, the first time we had 922G1 in the 1930s was just violent crimes. It doesn't get broadened beyond violent crimes until the 60s. And then it gets broadened again and again. So you have to convince us this is the right universe. DOJ's position, of course, is, well, it's all OK. But you understand in range we rejected that position. If that's right, don't we then have to disaggregate something like what the Sixth Circuit did and talk about what in the elements of the crime or what in the way the crime is normally committed or something else makes someone relevantly within the longstanding dangerous felony tradition? And how do we go about doing that? We do want to know, are we limited to the elements of the crime? Do we look at how this particular crime was committed? Do we look at the rap sheet and other things that have been proven beyond a reasonable doubt? Or do we do a wide ranging inquiry into other indicia of dangerousness, which would raise some due process concerns? I respectfully disagree with that reading of range. Range didn't say that food stamp fraud by its nature is insufficient as a basis for disarmament. Range looked at the characteristics of range rather than the characteristics of food stamp fraud. It says his record shows that he is not dangerous. That is precisely the type of inquiry that we are advocating here and that Congress prescribed in Section 925C. Now, if you go down the road of saying there are certain types of felonies that categorically, whether based on their elements or other circumstances, are going to be ineligible even for the initial disarmament. Then I think you do get into, or we frankly, get into a lot of problems because that is going to be extremely difficult to administer. Courts have spent the better part of four decades trying to figure out what a violent crime is or crime of violence is under various statutes, including the Armed Career Criminal Act. You've had multiple federal statutes declared void for vagueness because their definition of a crime of violence or violent crime or violent felony has been deemed too improper. By contrast, courts have not had any kind of difficulty applying the type of approach we're advocating. Take the Sixth Circuit, for example. Sixth Circuit has adopted essentially the approach that we've suggested. You do a holistic analysis of the individual and determine if that person is dangerous and has rebutted the presumption of dangerousness. Sixth Circuit, you mean Williams? Williams, yeah. We'll look at his predicate felony and we'll look at his entire criminal record. They stopped there, correct? They didn't say those were the only things to look at, but those were the most important factors. I mean, certainly those will be the most important factors in the analysis. As workable a standard as that might be, I'm assuming you would concede that there's no historical evidence of any sort of permanent disarmament for someone who committed the offense of public drunkenness. That the presumptions and rebutting, all of this is judicial invention and none of it finds any grounding in the family. Is that fair? No. I think part of it... Where are we permanently depriving public drunkards? So part of it is fair. I agree. Permanent deprivations with respect to many of these crimes are not going to be justifiable. And in many of these contexts, there will be a very strong case that a person can make that he should have his rights restored. Maybe that 90%, 95% of people who commit particular types of crimes, maybe even driving while intoxicated, will be able to get their rights back under a proper application of the Second Amendment and the 925C process. All we're saying is that analysis has to be conducted on an individual by individual level. Forgive me if I missed where you answered my question. Where is the historical evidence that that system that you've outlined, as practical and prudential as it might be, existed anywhere at the family? It existed, for example, in the Revolutionary War era. This is an example from Judge Tappar's opinion in Williams. Not in the context of felons, but in an analogous context of disarming loyalists. So those who are disloyal to the sovereign, who threaten uprising against the fundamental standards of the political community, are the same to public drunkards who were all over the place at the founding and were never permanently disarmed. I'm not sure how I see the connection there. If I might develop the connection. The statutes at the founding adopted different approaches. Some states adopted the approach of having an initial individualized inquiry into whether this particular person was or was not disloyal to the country and therefore should be disarmed. Other states, however, adopted some broad proxy that might be imperfect, such as whether someone refused to swear an oath of allegiance. Some people might do that for legitimate reasons. For example, Quakers had objections to swearing on religious grounds. But then they provided on the back end a safety valve where they'd have an individualized inquiry to determine whether that categorical generalization should be deemed inapplicable to a particular person. Now it's the same structure that we're advocating here. We start out with this presumption, again endorsed by the Supreme Court, that felons are dangerous. But that's not a conclusive presumption. That presumption can be rebutted and it'll be much easier for public drunkenness to rebut the presumption than other cases. I'll also note an analogy. Your analogy then require us to assume that public drunkenness is akin to disloyalty to the sovereign? No, I think it requires you to look at the principles underlying the founding era regulation. And the principle is you can have a general imperfect category if you have a safety valve on the back end. Do you think that people who are disloyal to the sovereign still constitute the people for purposes of the Second Amendment? Yes. The question of the scope of the people turns on things like whether the person is a citizen or a subject, not on whether the person is disloyal in some sense. We'll get you on rebuttal.  Good morning. May it please the court. I'm Attorney Joshua Prince and I represent the appellee, Mr. Williams, in this matter. In turning to the focus order that this court issued, I first want to address the first two questions that the court presented, which both overlap in the nature of whether when a civil and criminal challenge is filed, whether there should be a different analysis. I think if we look to the binding precedent of the U.S. Supreme Court in cases such as Leocol versus Ashcroft, FCC versus American Broadcasting Company, also even U.S. versus Thompson Center Arms, the Supreme Court has been abundantly clear that we cannot have a different analysis on whether a challenge to a law is brought in the civil or criminal context. With that being said, the question then becomes, what is the proper framework to apply? I've spent a substantial amount of time reading the concurring and dissenting opinions, not just in this circuit, but in other circuits. One of the things Judge Krause, your eloquent concurring opinion in Range 2 identified, a number of the issues that our district courts suffer, as well as U.S. As I argued in this matter before the panel, during oral argument, I believe taking a step back and looking at three separate categories of prohibition that are tethered to our history and tradition of disarmament is appropriate. The first category would be whether the person is of the people. Under the 922G context, this would include people who are illegals and also those who renounced their citizenship who didn't regain it. The second category would be what I refer to as the Rahimi category. That is those individuals who have been provided some form of process, comporting with due process, where there's a judicial finding that they pose a danger, a clear threat of danger to another person. These would include things such as those who are dishonorably discharged, involuntarily committed, protections from abuse, restraining orders, which Rahimi itself dealt with. The third category is the category that I believe brings us here today. Those who are convicted of specific offenses. And history and tradition dictate in relation to that category that when someone was imprisoned, they were prohibited from being able to possess firearms. And that makes sense. I don't think anyone here in the courtroom today is going to dispute the fact that we have a history and tradition of prohibiting those in a jail from possessing a firearm. However, once they were released, their rights were automatically returned, provided that they weren't prohibited under a separate category. And in fact, when we look to Range 2, this court, although it didn't analyze it under those separate categories, it did just that. First, you see this court go through and identify that Range is of the people. Next, this court goes through and looks at the fact that Mr. Range completed all of his court imposed obligations, paid his fines, his restitution, was no longer under any form of probation, parole, etc. And then turned to the fact that the government did not establish under what would be my second category, that there is a separate prohibition of dangerousness. And therefore, it found in Mr. Range's favor. I believe that exact analysis is the proper analysis that gives the district courts, the U.S. Attorney's Office, the Public Defender's Office, regular criminal defense attorneys, knowledge with which to know immediately whether someone is or is not prohibited. From a convictee standpoint, it's simply looking at whether the individual has comported with all the court imposed obligations. If they have, their Second Amendment rights have been automatically returned. And in fact, Judge Chung, as you may remember, we discussed your footnote in Range 2 during the panel discussion where Your Honor agreed that upon completion of their sentence, it would be automatic. And that is consistent with our history and tradition. The government hasn't pointed to anything that shows that once the individual is released from custody and no longer under probation, parole, supervised release, that they can continue to be divested of a constitutional right. Now, I will give you, I believe this court got it right in cases like Moore, where it said while the individual is still under supervised release, you can divest them of that right. Because at the time of founding, probation, parole, supervised release wasn't a thing. You were either in jail or you weren't. Here in the 21st century, we've opened it up to allow people to agree that if you want to be divested of your right, but you get out of jail, you can agree to that. Seeing that my time is up, I welcome questions. Can you tell us why we shouldn't consider post-conviction conduct in determining dangerousness? Because I don't believe it's tethered to our history and tradition, unless, again, it would be in relation to that second category where the government brings some sort of action in a court of law, comporting with due process, and shows that this person provides some sort of clear threat of physical violence to another person. And as our U.S. Supreme Court made clear, even where that occurs, it must be temporary. It cannot be permanent. And the bans that we are talking about under 922G are generally permanent. There are some exceptions to some of them, like a fugitive from justice, no longer a fugitive, obviously. But generally speaking, when we're looking at 922G1, it is a permanent ban. What if there is a subsequent conviction after the predicate conviction? Should that be something a court would consider? Only to the extent that the individual has not complied with the court-imposed obligations. If they have, then that also is no longer an issue in relation just to that convicted status. Again, there could be another separate issue. For example, you could have someone who is involved in some sort of simple assault whereby they get convicted or maybe they're on ARB, such of that nature. But at the same time, there's a restraining order filed against them. They're released now from all the court-imposed disabilities or obligations, let me say, but they're still prohibited because the restraining order continues in effect. So in that scenario, I do agree that the court should be able to look at that type of criteria. But the issue with dangerousness is its fluid nature. It is very akin, in my opinion, to that that the U.S. Supreme Court eschewed in Rahimi when the government argued he should be denied because he wasn't responsible. How do you define... Why is 925C not the answer for Mr. Williams? Well, there's a number of issues with 925C. First, we don't yet have any type of final rule. But setting that issue aside, one of the major issues is that an individual to apply for relief under 925C, they have to state that they are prohibited. That they agree. This challenge is in relation to whether constitutionally the government can even deny them to begin with. And I think there becomes issues of... But if your client admits he's prohibited, then he may be admitting to a crime because he's possessed firearms since this conviction, right? Unless it's unknowing. And as we know from a HAIF in such of that nature, and the record in this matter reflects that Mr. Williams had no knowledge. In fact, I pulled his... Well, I don't want to litigate whether he's committed some other crime. I'm just suggesting that if, in fact, he needs to say that he's a prohibited person under 925C, that would put him in potential criminal jeopardy. You would at least agree with the qualifier potential. Yes, Your Honor. And there are other issues. But didn't the panel, didn't the government concede that they would waive that argument? That there would be no... If you went into the administrative process, that would not have a binding effect on anything else? That is what the attorney said during argument. I don't believe that he was in a position to be able to bind the attorney general, especially into the future. We also have the issue that the proposed rule allows any future attorney general to revoke any relief granted. This court's well aware of when new administrations come into office, how all of a sudden everything in the past administration done is sought to be undone. And Mr. Williams has had this case pending now for nine years, nine years, going through this litigation, challenging this. And yes, the precedent has changed. But at the same time, he brought it nine years ago. And when we turn back to 925C, in 10 months, since the government has told people, some people, that they can apply for relief, 22 applications have been considered. That's it, 10 months. In their notice of proposed rulemaking, they anticipate a million applications to be filed. How are they possibly going to get through that if it takes them 10 months to get through 22? And I know our office has eight different applications pending that haven't been ruled on. In fact, the 28J letter that was filed with this court says that these individuals were granted relief. But I've looked at the Federal Register and I have yet to see anything published in the Federal Register, unlike the initial 10, that shows that 22 people had been, as of apparently Friday, granted some form of relief. And there's a number of issues, as I identified in my prior oral argument, with equal protection, how this application process is going to proceed to ensure individuals in the same exact scenario are treated identically. They haven't addressed that at all in the NPRM. How do we know that if Mr. Williams applies and is approved, that another person, identical position to Mr. Williams, won't be denied? Counselor, I understand your concerns that you're describing about the current 925C process, and we don't yet have a final rule. But are there certain ways in which that could play out that would be constitutionally sound? What if, to your point, there were just broad categories where if an individual fit into certain categories, they were permitted to have possession of a firearm again? Could it could it be made constitutionally sound, the 925C process? And if so, how? I don't know that the process, unless they take a very broad swath of basically granting relief almost in a large part in fashion to, you know, every individual who fits this criteria could cause 922G to come back into compliance constitutionally, or at least G1. There are so many different issues that would need to be addressed in that type of process, including whether a future administration could revoke that grant. And we're talking about a constitutional right here. Anyone should be able to know whether or not they still have their Second Amendment rights, or if they were taken back, taken away, whether they've been restored. But if the Supreme Court's understanding is so long as the person has a reasonable opportunity to have their rights restored. How does that play? I mean, how does that play out? There must be some way in which that can be satisfied. I don't believe that the US Supreme Court precedent supports that it's on the individual to have to apply to get their Second Amendment rights back. Based on the precedent, the Supreme Court was clear in Rahimi, only temporary prohibitions are constitutional. The court went out of its way on three different occasions to use the word temporary. It didn't need to. Clearly, that is an important word to the court. And if it can only be a temporary deprivation, sure, this court, as well as probably the US Supreme Court at some point, is going to have to decide what is a temporary disarmament. But here we have an individual 20 years since his alleged disarmament. So if you're saying that the problem is the presumption of permanent disarmament, you're also kind of saying that there's no cure that can be done through 925C. Just to follow up on Judge Mascot, she said, could it be written in a way that it would be? And you're saying maybe for temporary it could be. But if the problem is the presumption of permanent disarmament, you're saying there's no way that the government could do anything that would ever cure that. Because the presumption is the problem, not whatever cure the government could have. Is that your position? That is my position, in my opinion, Your Honor. But what is a court permitted to do? Let's assume that 925C either doesn't exist. What is a court permitted to consider? Because the affirmative act is going to come from the person who's been disarmed. What is it they can consider? It's not even a restoration. It's a declaration that 922G1 would be unconstitutionally applied to him. Correct. And I would put forth, Your Honor, that the individual doesn't have to apply for declaratory relief. If this court were to adopt the analysis I've put forth. Because if we just move to the convicted status that we're here today based upon, it would simply be looking, have they completed all their court-imposed obligations? If so... That's a different question. Let's just go with Judge Schwartz's question. Assume he applies in a civil declaratory judgment action, what information can the court consider? It would be just simply what he was, not even what he was convicted of, but has he complied with all of his court-imposed obligations relative to that conviction? All right. Assume we don't agree with that. What's the next fallback position? Well, at that point, Your Honor, although I think dangerousness is an extremely sticky issue, like I said, consistent with the responsible nature argument that the government made previously in Rahimi, there would need to be some determining factors and limiting factors of what all a court can consider to determine someone's dangerousness. And what can we consider? What could a court consider? So there's the predicate felony. There's the way in which he committed the felony. There's other criminal records, other convictions or pleas. And then I guess there's anything else, all post-conviction conduct. Whatever he did yesterday.  And I think that goes a step too far when you're going to consider anything because there's no due process and individual, again, especially because this law is a criminal law in nature. What part is a step too far? Judge Porter just gave you like four things. Which part is a step too far? I believe that only the predicate offense and compliance with the predicate offense obligations. So it's a categorical approach, right? Correct, Your Honor. The court could not consider the facts that led to that conviction and the resulting sentence. Stuck with just the elements of the crime of conviction only. If we look to history and tradition, I believe that is accurate, Your Honor. Again, as I... And what history and tradition are you relying on? I think there was already some discussion you had about the fact that there was no rearmament process. So, again, under the convicted status, it would be have they complied with all their court-imposed obligations because the district court trial... Or listed what the facts were underlying that conviction. That wouldn't apply. And historically, again, that was not considered unless we move to the Rahimi category where the government brought an action comporting with due process showing that this person posed a clear danger of physical threat or violence to another person and obtained a judicial finding to that degree, at which point then, temporarily, that person could continue to be prohibited during the duration of that finding. So if there's a... Oh, sorry. No, go ahead. If there's a presumption, that takes care of the due process issue, right? Then everyone knows from the onset, convicted of a felony, any felony, prohibited under the statute, that takes care of the due process issue, right? It would arguably take care of the due process issue, except for it would seemingly be violative of the Second Amendment. Okay, I'll ask you about the due process issue. On the Second Amendment, you've said there needs to be an individualized finding. What the government has proposed here, and appears to be conducting even before the rule is in place, looks like an individualized determination about whether the person before them is dangerous or not, is continuing to be a threat to public safety. Why doesn't that take care of... fits into the second category, the sort of Rahimi category that you've identified? Well, as I mentioned, it could only be temporary. Mr. Williams has been now arguably subjected to this for 20 years. But he's been invited to put in an application, and if he did, it might be next week his rights were restored, right? I don't think that's likely, given it took 10 months from another case that was offered at the same time for a determination. But nevertheless, again, it could be revoked at any point in time. But that's possible if he puts in his application at this time? It's possible, but he's not required to do that. Again, it would be hypothetical for us to assume what's going to occur. The government admitted during our argument last time that they couldn't say whether his application would be granted or not. He's spent, as I said, nine years litigating this case, and there's going to be challenges to the final rule that's going to cause it to be questioned and potentially ruled unconstitutional or unlawful. The executive here isn't waiting for the rule to be finalized. They're already engaged in a process and have restored 32 people's rights. So given that, why wouldn't we, looking at the principles that go along with discretionary exhaustion, prudential exhaustion as it's sometimes called, require that your client and others avail themselves of that process before bringing litigation in federal courts? Because again, we're challenging the constitutionality of this issue, not that there is a relief mechanism. We're saying it's unconstitutional to continue to deprive him of this right. But doesn't our case law say the unconstitutionality is because there's not a relief mechanism? And now there is. But I don't believe it's truly a relief mechanism in the way the government is contending it is. It's temporary. It may go away in the next administration. Everyone granted relief may have their relief revoked. There are a plethora of issues with 925C. And it also statutorily says that someone may apply for this relief, not that they are required to apply for it. And that was a decision by the Congress. Let me ask you about the factors that can be considered, because the Attorney General has rejected a categorical approach. And is looking at dangerousness, refusing, as the categorical approach makes us do. And we've said over and over as of other circuits, we have to disregard reality. And use these artificial limits that often lead to unjust results. Is it your position that the factors that the executive branch has said are relevant to the dangerousness determination under the Second Amendment are impermissible? That the President has it wrong? As I see my time's up, may I respond, Your Honor? Go ahead. I don't believe in the NPRM that there is a proper framework put forth of what constitutes dangerousness. And I believe anyone should be able to look at any final rule, which again, we all can guess at what it may be, and know whether or not they would be granted relief. And the NPRM has made very clear that there are going to be large categories of people that will not be granted relief. And there's questions about whether that's correct with the delegation of authority by the Congress and a number of other issues. But there hasn't been a clear delineation of what constitutes dangerousness, whose application would be approved. And I'd be remiss not to mention the fact that the Attorney General is, was a defendant, now the appellant in this matter, and is in the driver's seat. We were successful at the district court. If the Attorney General doesn't believe Mr. Williams poses any risk, they can withdraw this appeal. And that was raised before the panel as well. But they have elected to proceed forward, which I think also draws into question whether Mr. Williams would actually be granted relief, since we have all the same players involved. All right. Well, thank you, counsel. We'll hear from, we'll hear rebuttal. Three quick points to rebuttal. First, I entirely appreciate that it is frustrating to have this case litigated for nine years and still not have a definitive resolution. Nevertheless, it is a basic principle of law that courts must apply the legal rules that exist when they issue their decisions. And today, those legal rules include Section 925C. So I don't think the fact the case has been dragging on for a long time is a basis for disregarding Section 925C before taking the grave step of striking down an act of Congress as unconstitutional. Mr. Suri, let me ask you about 925C, because I assume that you agree that criminal defendants like Mr. Bost or others who have committed far less serious crimes than Mr. Bost, they have a right to file a motion to dismiss the indictment, claiming that 922G1 is unconstitutional as applied. We agree on that, right? They have a right to file it, but the motion would fail because the person could instead have either filed a 925C application, or if 925C was not available, filed a declaratory judgment civil suit. Oh, so you think a criminal defendant who doesn't take the affirmative step of filing for 925C relief is somehow procedurally barred or substantively barred from succeeding on their motion to dismiss the indictment? Substantively barred, exactly right. And the reason the person is substantively barred, and I can give you a few analogies when I have more time in Bost, the reason the person is going to be substantively barred is that what the Second Amendment requires is a reasonable opportunity to rebut the presumption of dangerousness, and as long as that's provided, the statute is constitutional. All right, let me just finish for one second, if I could. I wanted to talk about Williams, but I was asking about the Bost situation because I want to make sure I understand the government's position. Based on what you just said, I take it that criminal defendants filing motions to dismiss Williams who filed D.J. actions? Entirely correct. All right, and both lose if they don't, they have to go 925C route first. Correct. Okay. Where does the presumption of dangerousness come from? That's the term the Supreme Court has used, but it also comes from history and tradition, as Judge Tappar's opinion for the Sixth Circuit explained. It is permissible for legislatures to presume that a category of people is dangerous as long as there's a reasonable opportunity to rebut that presumption. Judge Hardiman asked you what are dangerous categories of people. I didn't hear the answer to that. What are dangerous categories of people in your opinion? If you're asking what is the definition of dangerousness, then I would say categories of people who pose an unusually high risk of misusing firearms relative to the population as a whole. Does that include any felon, all felons? Presumptively, yes, and the basis we have for that is the fact that that's what most states and Congress have determined for decades. Now, that doesn't determine what the Second Amendment means, but that is good evidence of who is and isn't dangerous. With respect, legislatures across the country are better positioned to make empirical judgments about dangerousness than are courts. Courts are here to enforce the Second Amendment principle that there must be a reasonable opportunity for individuals to rebut. In Rahimi, I understood why it kind of made sense because there was an adjudication by a judge with some due process. He found the guy to be dangerous to someone, present a physical danger to someone else. How would that work for Mr. Williams? His felony is a 20-year-old DUI. The court in Rahimi was very clear to say that although that case involved an individualized determination, it did not by any means mean to foreclose categorical rules. It had a citation of Heller, the section talking about felons. Right. Judge Mascott. Thank you. I needed a little help from the chief. Counsel, could you talk a little bit about whether there are constitutional contours in your view to reasonable opportunity? For example, does it require a neutral arbiter? How do we guarantee neutrality? And is there a certain time limit? I hear you saying that nine years is not too long to wait for a reasonable opportunity. No, I'm not saying that nine years is not too long to wait. It is far too long to wait for someone whose Second Amendment rights have been denied. It's just an unfortunate fact that this litigation has taken that long. With respect to the constitutional contours, I wouldn't want to say that it is definitively required to have judicial review, but at least it is sufficient that there is judicial review here that is an independent judge determining ultimately whether the statutory standard is satisfied. So if there's an independent judge on the back end, there can specifically not be neutrality at the initial attorney general phase within DOJ, people who are predisposed to be against gun rights for felons? How are we going to craft a fair process? There's no responsibility for that at all under the statute? No, under the Supreme Court's due process jurisprudence, there would likely be a requirement of an impartial adjudicator. And that's not coming from the Second Amendment. That's coming from the due process clause. But that would apply here as in other administrative adjudications. And is the department considering that as it crafts the rule? The department is considering all sorts of comments that have been made as it crafts the rule. But the statute ultimately vests the authority in the attorney general. That is something that's unavoidable under Supreme Court decisions like Arthrex that say that the head of the department must have the ultimate authority to make the decision. It sounds, Kampha, like you're discussing the considerations that inform discretionary exhaustion and balancing of the interests on the institutional side of what the statutory scheme looks like if it's given discretion to the agency, the efficiency that that would create. And on the other side, that if there were an arbiter that was predisposed to deny the right, that would counsel against exhaustion under the doctrine of discretionary exhaustion. Are you advocating that as a way we should think about your arguments and the relief that is being sought today, or is the only relief you're asking for a dismissal on the merits? No, no, Judge Krause. It would be perfectly acceptable to us if the court wants to frame this in terms of exhaustion. We do think it is cleaner doctrinally to frame it in terms of the Second Amendment's substance. That is to say, what the Second Amendment on the merits requires is a reasonable opportunity to rebut the presumption of dangerousness, and that is satisfied by the administrative process. Why should or how can we impose an exhaustion requirement when Congress itself didn't do so in 925? It is implicit in Section 925C's structure that an individual first file an application with the Attorney General and only then go to court to obtain judicial review. So I agree there's nothing explicit in the statute, but that is inherent in the statutory scheme. So can I just go back to your theme of the Second Amendment requires a reasonable opportunity to rebut the presumption of dangerousness. Are you deriving this primarily from Rahimi? Because wasn't the issue in Rahimi that the reasonable opportunity occurred beforehand? It wasn't talking about post-deprivation opportunities, but pre-deprivation opportunities? I'm not deriving it from Rahimi. I'm deriving it first from this Court's decision in range, and secondly, from the history and tradition of the Sixth Circuit cataloged in the United States Constitution. So then maybe we should account for the Rahimi angle, which says that the notice and opportunity was pre-deprivation notice and opportunity, and as you know, there's a big difference between pre- and post-deprivation opportunities to be heard. But I think if you say that is the extent of the legislature's authority, then you are eliminating a separate principle that Rahimi explicitly recognized, which is the ability to make categorical judgments. The moment you say you must have an individualized opportunity to show that you are not dangerous before you are disarmed, that means categorical disarmaments are out the window, and that's contrary to what Rahimi explicitly states. I had a discussion with your adversary about the prior panel opinion argument, and counsel for the government said nothing would be waived if someone engaged in the 925C administrative process. Are you willing to adopt that as well? Yes. I think that what my friend was suggesting is that he would somehow have to admit that he has violated the law. That's not true. All he'd have to say is, here's a law that prospectively, going forward, is, in my view, preventing me from possessing a gun, and I'd like relief from that. Now, he has to do that to file a civil suit as well. He has to establish standing, and to establish standing, he has to say, this law has prevented me from owning a gun. So 925C is working no differently from standing for a civil suit. Well, your time is up, but we jumped all over you when you stood up. If you want to sum up anything else you wanted to say within maybe 20 seconds, I'll have another chance to speak. You will. Thank you. Thank you. Thank you, counsel, for your excellent argument and briefing. In this case, we'll take the case under advisement. If we can get a transcript in this case as well, that would be great if the parties could split it, and we'll take a short recess. Thank you.